# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

### Case No.: 0:18-cv-60237-KMM

Tikiz Franchising, LLC and
Tikiz Enterprises, LLC,

       Plaintiffs,

v.

Kona Ice, Inc.,

       Defendant.

_____/

## JOINT PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Order dated December 6, 2023 [D.E. 20], Tikiz Franchising, LLC, Tikiz Enterprises, LLC, and Kona Ice, Inc. (collectively, the "Parties") hereby submit their Joint Proposed Jury Instructions in advance of trial, presently schedule to begin on June 17, 2024.

1

Respectfully submitted: June 11, 2024


By: /s/ Mark C. Perry
    Mark C. Perry
    Florida Bar No. 251941
    mark@markperrylaw.com
    LAW OFFICES OF MARK
    PERRY, PA
    2400 East Commercial
    Boulevard, Suite 511
    Ft. Lauderdale, Florida 33308
    Telephone:  954-351-2601

    Of Counsel:
    Michael Culver
    Culver@mwzb.com
    Brian M. Koide
    BKoide@mwzb.com
    Millen White Zelano & Branigan
    P.C.
    2200 Clarendon Blvd., Suite 1400
    Arlington, Virginia 22201
    Telephone: (703) 243-6333
    Facsimile:  (703) 243-6410

    *Attorneys for Plaintiffs*

By: /s/ Elizabeth McIntosh
    Nina Greene
    Florida Bar No.: 72079
    ngreene@Venable.com
    Elizabeth G. McIntosh
    Florida Bar No.: 1011555
    EGMcIntosh@Venable.com
    Veneable LLP
    4400 Miami Tower
    100 Southeast Second Street
    Miami, Florida 33131
    Telephone:  (305) 349-2300
    Facsimile:   (305) 349-2310

    Of Counsel:
    Brett A. Schatz
    bschatz@whe-law.com
    Wood, Herron & Evans,
    L.L.P.
    600 Vine Street, Suite 2800
    Cincinnati, Ohio 45202
    Telephone:  (513) 241-2324
    Facsimile:   (513) 241-6234

    *Attorneys for Defendant*

# TABLE OF CONTENTS

I. **PRELIMINARY INSTRUCTIONS – NATURE OF THE CASE (source: 2024 American Intellectual Property Law Association Model Patent Jury Instructions)**

   1.   Nature of the Action

   2.   United States Patents

   3.   Patent Litigation

   4.   Contentions of the Parties

   5.   Trial Procedure

II. **Preliminary Instructions – GENERAL (source: Eleventh Circuit Pattern Jury Instructions for Civil Cases)**

   6.   General Preliminary Instruction

   7.   Burden of Proof - Clear and Convincing Evidence

   8.   Official English Translation/Interpretation

   9.   Jury Questions

   10   Interim Statements

**Trial Instructions (source: Eleventh Circuit Pattern Jury Instructions for Civil Cases)**

   11.   Stipulations

   12.   Use of Depositions

   13.   Use of Recorded Conversations and Transcripts

   14.   Interim Statements

   15.   Use of Interrogatories

   16.   Judicial Notice

i

17.    In-Trial Instructions on News Coverage

**Basic Instructions (source: Eleventh Circuit Pattern Jury Instructions for Civil Cases)**

18.    Introduction

19.    Duty to Follow Instructions - Corporate Party Involved

20.    Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

21.    Credibility of Witnesses

22.    Impeachment of Witnesses because of Inconsistent Statements

23.    Expert Witness

24.    Duty to Deliberate when only the Plaintiff Claims Damages

25.    Election of Foreperson Explanation of Verdict Form[s]


**III.    Appendix A – Glossary of Terms**

I.   **POST TRIAL INSTRUCTIONS (source: 2024 American Intellectual Property Law Association Model Patent Jury Instructions)**

1.   Summary of Patent Issues

2.   Damages

2.0   Damages—Generally

    2.1   Date Damages Begin

        2.1.1   When the Date of the Start of the Damages Period Is Stipulated

    2.2   Damages—Kinds of Damages That May Be Recovered

        2.2.1   Lost Profits

            2.2.1.1   Lost Profits—"But For" Test

            2.2.1.2   Lost Profits—Panduit Factors

            2.2.1.3   Lost Profits—Panduit Factors—Demand for the Patented Product/Method

            2.2.1.4   Lost Profits—Panduit Factors—Acceptable Non-Infringing Substitutes

            2.2.1.5   Lost Profits—Panduit Factors—Market Share

            2.2.1.6   Lost Profits—Panduit Factors—Capacity

            2.2.1.7   Lost Profits—Panduit Factors—Amount of Profit—Incremental Income Approach

        2.2.2   Convoyed Sales

        2.2.3   Reasonable Royalty

            2.2.3.1   Reasonable Royalty—Generally

            2.2.3.2   Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method

2.2.3.3    Reasonable Royalty—Relevant Factors If Using the Hypothetical Negotiation Method

///////////////////////////////////

///////////////////////////////////

**KONA ICE'S POSITION:**  Section 2.2.3.4 (apportionment) and Section 2.2.3.5 (entire market value rule) are not appropriate or applicable to this case.  No apportionment is applicable here because the claims of the '447 patent are directed to and cover the entire infringing product – the Tikiz' service vehicle.  For that same reason, the Tikiz' service vehicle does not have both infringing and non-infringing components.  Rather, the entire Tikiz' service vehicle is the infringing product.  Kona Ice provides its position below to better enable the Court to more readily evaluate the parties' arguments in the context of the proposed instructions.

**TIKIZ' POSITION:** *See* Tikiz's discussion in the corresponding Sections 2.2.3.3 (Reasonable Royalty—Relevant Factors If Using the Hypothetical Negotiation Method), 2.2.3.4 (Reasonable Royalty—Attribution/Apportionment), and 2.2.3.5 (Reasonable Royalty—Entire Market Value Rule) below. Tikiz provided its position below to better enable the Court to more readily evaluate the parties' arguments in the context of the proposed instructions.

2.2.3.4    Reasonable Royalty—
Attribution/Apportionment

2.2.3.5    Reasonable Royalty—Entire Market Value
Rule



2.2.3.6    Reasonable Royalty—Timing

2.2.3.7    Reasonable Royalty—Availability of Non-
Infringing Substitutes

2.2.3.8    Reasonable Royalty—Use of Comparable
License Agreements

2.3    Doubts Resolved Against Infringer

3.    Willful Infringement

3.0    Willful Infringement—Generally

<u>**PRELIMINARY JURY INSTRUCTIONS**</u>

**1.      Nature of the Action**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

/////////////////////////////////////////

/////////////////////////////////////////

**KONA ICE'S POSITION:**

- Kona Ice's Proposed Language:

This is a patent case.  The patent involved in this case relates to a mobile vehicle, such as a truck, that is used to dispense flavoring for a shaved ice confection.  The mobile vehicles incorporates a liquid toppings dispensing system through which the flavoring is delivered to the shaved ice confection.

- Kona Ice's Arguments:

Kona Ice's proposed language provides the jury with a practical and understandable introduction to this case.  Tikiz' proposal relies upon patent language that could confuse the jury.

**TIKIZ' POSITION:**

- Tikiz' Proposed Language:

  This is a patent case.  The patent involved in this case relates to a mobile confectionary apparatus for dispensing beverages and frozen confections, such as shaved ice.

- Tikiz's Arguments:

  The '447 Patent describes the field of invention as "an invention [that] relates … particularly … to a mobile confectionary apparatus for dispensing beverages and/or fronzen confections." '447 Patent,  1:16-19; see also id., Title ("Liquid Toppings Dispensing System"); id., Abstract ("A mobile confectionary apparatus includes …."). Claim 1 recites a "[a] mobile confectionary apparatus, comprising…" The "vehicle" is recited as being a component of the "mobile

confectionary apparatus." Tikiz' position is both true to the

specification and claim language.

/////////////////////////////////////

/////////////////////////////////////

During the trial, the parties will offer testimony to familiarize you with this

technology. For your convenience, the parties have also prepared a Glossary of

some of the technical terms to which they may refer during the trial, which will be

distributed to you. [Court hands out Appendix A–Glossary of Patent and Technical

Terms.]

Kona Ice is the owner of a patent, which is identified by the Patent Office number:

9,751,447 (which may be called "the '447 patent"). This patent may also be

referred to as "Kona Ice patent." Tikiz Franchising, LLC and Tikiz Enterprises,

LLC (collectively, "Tikiz") are the other parties here.

## 2.    United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes

called the "PTO" or "USPTO"). A patent gives the owner the right to exclude

others from making, using, offering to sell, or selling the claimed invention within the United States or importing it into the United States. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO by an applicant. The application includes a specification, which should have a written description of the invention, how it works, and how to make and use it so as to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims is to particularly point out what the applicant regards as the claimed invention and to define the scope of the patent owner's exclusive rights.

After an application for a patent is filed with the PTO, the application is reviewed by a trained PTO Patent Examiner. The Patent Examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the claimed invention. In examining a patent application, the Patent Examiner searches records available to the PTO for what is referred to as "prior art," and he or she also reviews prior art submitted by the applicant.

When the parties are done presenting evidence, I will give you more specific instructions as to what constitutes prior art in this case. Based on my guidance, you must decide whether or not a reference is prior art. Generally, prior art is previously existing technical information and knowledge against which the Patent Examiners determine whether or not the claims in the application are patentable. The Patent Examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. In addition, the Patent Examiner may consider whether the claims are directed to subject matter that is not eligible for patenting, such as natural phenomena, laws of nature, and abstract ideas. The Patent Examiner also may consider whether the claims are definite, are adequately enabled, and are adequately described by the application's specification.

Following the prior art search and examination of the application, the Patent Examiner advises the applicant in writing what the Patent Examiner has found and whether any claim is patentable (in other words, "allowed"). This writing from the Patent Examiner is called an "Office Action." More often than not, the initial Office Action by the Patent Examiner rejects the claims. The applicant then responds to the Office Action and sometimes cancels or changes the claims or submits new claims or makes arguments against a rejection. This process may go back and forth between the Patent Examiner and the applicant for several months

or even years until the Patent Examiner is satisfied that the application and claims are patentable. Upon payment of an issue fee by the applicant, the PTO then "issues" or "grants" a patent with the allowed claims.

The collection of papers generated by the Patent Examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

### 3.    Patent Litigation

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the claimed invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

I will now briefly explain the parties' basic contentions in more detail.

**4.     Contentions of the Parties**

Kona Ice contends that Tikiz imports, makes, uses, offers to sell, or sells a mobile service vehicle design that infringes claims of the '447 patent.

Let's take a closer look at the patent in this case. The cover page of the '447 patent identifies the date the patent was granted and the patent number along the top, as well as the inventor's name, the filing date, and the list of references cited and considered in the PTO (this list may continue on the next page).

///////////////////////////

///////////////////////////

<u>KONA ICE'S POSITION:</u>

BASED ON THE ARGUMENTS MADE BY KONA ICE IN ITS MOTION IN
LIMINE (D.E. 23), IT IS INAPPROPRIATE TO MENTION ANY TIKIZ'
DESIGNS THAT WERE NOT DISCLOSED DURING DISCOVERY.

- Kona Ice's Proposed Instruction:

Kona Ice must prove that Tikiz infringes one or more claims of the '447 patent by
a preponderance of the evidence. That means that Kona Ice must show that it is
more likely that Tikiz' mobile service vehicle infringes than that it does not
infringe.  In this case, I have already determined that Tikiz' mobile service vehicle
infringes the '447 patent.


<u>TIKIZ' POSITION:</u>

- Tikiz' Proposed Instruction:

  Kona Ice must prove that Tikiz infringes one or more claims of the '447
  patent by a preponderance of the evidence. That means that Kona Ice must
  show that it is more likely that Tikiz' mobile service vehicle infringes than
  that it does not infringe.  In this case, I have already determined that two of
  Tikiz' mobile service vehicle designs infringe the '447 patent.

8

- Tikiz' Arguments:

  The Court has yet to rule on Kona Ice's Motion in Limine (D.E. 23). Even if the Court excludes reference to other designs, Tikiz's proposed instruction is factually accurate, and makes no reference to other designs. It is identical to Kona Ice's proposed instruction except for the insertion of "two of" and "designs" as noted above.

/////////////////////////////////////////

/////////////////////////////////////////

During this case, Tikiz denied that it was infringing the claims of the '447 patent, and also contended that the '447 patent is invalid and unenforceable.  In this case, I have also already determined that the '447 patent is not invalid, and that the '447 patent is not unenforceable.

5.    **Trial Procedure**

I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors.

9

In the second phase, the opening statements will be presented to you. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations. You must make your decision based on the evidence admitted during the trial and not the lawyers' statements and arguments.

In the third phase, the evidence will be presented to you. Witnesses will take the witness stand and documents will be offered and admitted into evidence. Kona Ice goes first in calling witnesses to the witness stand. These witnesses will be questioned by Kona Ice's counsel in what is called direct examination. After the direct examination of a witness is completed, Tikiz has an opportunity to cross-examine the witness. After Kona Ice has presented its witnesses, Tikiz will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony. All three are acceptable forms of testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all the evidence relating to a particular issue may not be presented all at one time but, rather, may be presented at different times during the trial. You need to keep an open mind as the

evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

In the fourth phase, the lawyers will again have an opportunity to talk to you in what is called "closing arguments." As with the opening statements, what the lawyers say in the closing arguments is not evidence for you to consider in your deliberations.

In the fifth phase, I will read you the final jury instructions. I will instruct you on the law that you must apply in this case. I have already explained to you a little bit about the law. In the fifth phase, I will explain the law to you in more detail.

Finally, the sixth phase is the time for you to deliberate and reach a verdict. You will evaluate the evidence, discuss the evidence among yourselves, and decide in this case. We both have a job to do. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language, even if you do not agree with me. Nothing I say or do during the trial is intended to indicate what your verdict should be.

## 6.    General Preliminary Instruction

Members of the Jury:

Now, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

13

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- · the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- · the witness's memory;

- · the witness's manner while testifying;

- · any interest the witness has in the outcome of the case;

- · any bias or prejudice the witness may have;

- · any other evidence that contradicts the witness's testimony;

- · the reasonableness of the witness's testimony in light of all the evidence; and

- · any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

14

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. Kona Ice claims the Defendant, Tikiz, owes monetary damages for infringing the '447 patent. Kona Ice also claims that Tikiz infringement was willful.

Burden of proof:

Kona Ice has the burden of proving damages by what the law calls a "preponderance of the evidence." That means Kona Ice must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring Kona Ice and the evidence favoring Tikiz on opposite sides of balancing scales, Kona Ice needs to make the scales tip to its side. If Kona Ice fails to meet this burden, you must find in favor of Tikiz.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information

about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related

to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

    If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

    Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Kona Ice will present its witnesses and ask them questions. After Kona Ice questions the witness, Tikiz may ask the witness questions – this is called "cross-examining" the witness. Then Tikiz will present its witnesses, and Kona Ice may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

7.    **Burden of Proof – Clear and Convincing Evidence**

Sometimes a party has the burden of proving a claim or defense by clear and convincing evidence. This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain. This standard should be applied to whether Kona Ice has established that Tikiz infringement was willful.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

8.  **Official English Translation/Interpretation**

You may hear or see languages other than English during this trial.

You must consider evidence provided through only the official court [interpreters/translators]. It is important that all jurors consider the same evidence. So even if some of you know [language], you must accept the English [interpretation/translation] provided and disregard any different meaning.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

9.    **Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing. Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

**10.    Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**<u>ANNOTATIONS AND COMMENTS</u>**

No annotations associated with this instruction.

11. **Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.  In this case, the Parties have stipulated that:

a.      Kona Ice is the owner of the '447 patent.

b.      Tikiz infringed the '447 patent through offering for sale and selling its pre – and post – 2017 service vehicles to twenty – eight of its franchisees.

c.      The '447 patent is valid.

d.      Franchisees of Tikiz that purchased from Tikiz and used a service vehicle found to infringe by the Court include the following: Al Liu, Guillermo Canedo, Jareth Navarre, Tim Snee, Kelly Hodgson, Brandon Crowder, Oline Aucoin, Robert Hocking, Sean OConnor, John Meza.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

**12.    Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

**13.    Use of Recorded Conversations and Transcripts**

You also may hear a recorded conversation. This is proper evidence for you to consider. Please listen to it very carefully. I may allow you to have a transcript of the recording to help you identify speakers and guide you through the recording. But remember that it is the recording that is evidence – not the transcript. If you believe at any point that the transcript says something different from what you hear on the recording, disregard that portion of the transcript and rely instead on what you hear.

**<u>ANNOTATIONS AND COMMENTS</u>**

No annotations associated with this instruction.

**14.    Interim Statements**

At the beginning of the trial, I told you that the lawyers might make short statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Please remember that any statement you hear – like all statements by the lawyers – isn't itself evidence.

**<u>ANNOTATIONS AND COMMENTS</u>**

No annotations associated with this instruction.

**15.     Use of Interrogatories and Requests for Admission**

You may hear answers that a party gave in response to written questions the other side submitted.  The questions are called "interrogatories" and "requests for admission." You must consider answers to as though the party gave the answers on the witness stand.

**<u>ANNOTATIONS AND COMMENTS</u>**

No annotations associated with this instruction.

**16.    Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." You must accept it as true for this case.

**<u>ANNOTATIONS AND COMMENTS</u>**

No annotations associated with this instruction.

17.    **In-Trial Instructions on News Coverage**

Reports about this trial may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

## 18.    Introduction

I will now present to you some additional basic instructions.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

**19.     The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

**20.    Consideration of Direct and Circumstantial Evidence;
    Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

**21.    Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

34

**22.    Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**23.    Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**24.     Duty to Deliberate When Only the Plaintiff Claims Damages**

Of course, the fact that I have given you instructions concerning the issue of Kona Ice's damages should not be interpreted in any way as an indication that I believe that Kona Ice should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

**25.**     **Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

## ANNOTATIONS AND COMMENTS

No annotations associated with this instruction.

## I.        Post-Trial Instructions

### 1.        Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following two main issues:

1.      What amount of damages (if any) or reasonable royalty Kona Ice has proven by a preponderance of the evidence.

2.      Whether Kona Ice has proven by clear and convincing evidence that Tikiz's infringement was willful.

35 U.S.C. § 102(a), (g) (pre-AIA); *Teva Pharm. Indus. v. AstraZeneca Pharm.*, 661 F.3d 1378 (Fed. Cir. 2011); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002); *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1343 (Fed. Cir. 2001); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035–40 (Fed. Cir. 2001); *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1444–46 (Fed. Cir. 1984); See Preliminary Jury Instructions 6 and 7.

### 2.        Damages

### 2.0        Damages—Generally

I have already determined that Tikiz infringed the '447 patent through offering for sale and selling its pre – and post – 2017 service vehicles to twenty – eight of its franchisees.  I have also already determined that the '447 patent is valid and enforceable.  Therefore, you must determine the amount of damages (if any) to be awarded Kona Ice for the infringement.

Kona Ice must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by Kona Ice, damages must be in an amount adequate to compensate Kona Ice for the infringement. The purpose of a damages award is to put Kona Ice in about the same financial position it would have been in if the infringement had not happened. But the damages award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

35 U.S.C. § 284 (2004); *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018); *Bigelow v. R.K.O. Pictures, Inc.*, 327 U.S. 251, 264 (1946); *ResQNet.com, Inc. v. Lansa,*

*Inc.*, 594 F.3d 860, 868–69 (Fed. Cir. 2010); *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544–45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

## 2.1    Date Damages Begin

### 2.1.1  When the Date of the Start of the Damages Period Is Stipulated

Kona Ice and Tikiz agree that the date for the start of any damages calculation is September 5, 2017.

## 2.2    Damages—Kinds of Damages That May Be Recovered

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "What profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can include not only the profits the patentee would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related or collateral products along with those lost sales or from being forced to reduce its price for its product or related or collateral products to compete.

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted just before infringement began. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

35 U.S.C. § 284; *Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Seymour v. McCormick*, 57 U.S. 480, 490–91 (1854); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009); *Monsanto Co. v. McFarling*, 488 F.3d 973, 978 (Fed. Cir. 2007); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

### 2.2.1  Lost Profits

#### 2.2.1.1        Lost Profits—"But For" Test

Kona Ice is seeking lost-profits damages in this case. To prove lost profits, Kona Ice must show that, but for Tikz' infringement, Kona Ice would have made additional profits through the sale of all or a portion of the sales made by Tikiz. Kona Ice must prove this by a preponderance of the evidence. Part of your job is to determine what the parties who purchased the infringing service vehicles from Tikiz would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by Kona Ice, not the profits, if any, made by Tikiz on the infringing sales.

*Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000).

#### 2.2.1.2        Lost Profits—Panduit Factors

Kona Ice has proven its lost profits if you find that Kona Ice has proven each of the following factors by a preponderance of the evidence:

1.        a demand for the patented product in the relevant market;

2.        the absence of acceptable non-infringing substitutes;

3.        that Kona Ice had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by Tikiz; and

4.        the amount of profit that Kona Ice would have made if it were not for Tikiz' infringement.

I will now explain each of these factors.

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284–85 (Fed. Cir. 2017); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

#### 2.2.1.3        Lost Profits—Panduit Factors—Demand for the Patented Product/Method

The first factor asks whether there was demand for the patented product, in the relevant market. Kona Ice can prove demand for the patented product by

3

showing significant sales of Kona Ice's own patented product or demand for a product that directly competes with Tikiz' infringing product. Kona Ice also can prove demand for the patented product by showing significant sales of Tikiz' product that are covered by one or more of the asserted claims of the patent-in-suit. To use sales of Tikiz' product as proof of this demand, however, Kona Ice's and Tikiz' product must be sufficiently similar to compete against each other in the same market or market segment.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218–19 (Fed. Cir. 1993).

### 2.2.1.4       Lost Profits—Panduit Factors—
### Acceptable Non- Infringing Substitutes

The second factor asks whether non-infringing, acceptable substitutes for Kona Ice's product competed with Tikiz' infringing product in the marketplace and the impact of such substitutes on the marketplace absent the sale of Tikiz' product. If the realities of the marketplace are that competitors other than Kona Ice would likely have captured some or all of Tikiz' sales of the infringing product, even despite a difference in the products, then Kona Ice is not entitled to lost profits on those sales that would have been made by non-infringing substitute.

To be an acceptable substitute, the product must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitute also must not infringe the patent, either because they were licensed under the patent or they did not include all the features required by the patent. The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product. The acceptable substitute, in addition to being either licensed or non-infringing, must have been available during the damages period. The acceptable substitute need not have actually been sold at that time. But, if the acceptable substitute was not sold during the damages period, then Tikiz must show by a preponderance of the evidence that, during the damages period, a competitor or Tikiz had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. If you determine that some of Tikiz' customers would just as likely have purchased an acceptable non-infringing substitute, then Kona Ice has not shown it lost those sales but for Tikiz's infringing sales.

Even if you find that Kona Ice's and Tikiz' products were the only ones with the advantages of the patented invention, Kona Ice is nonetheless required to prove to you that Kona Ice, in fact, would have made Tikiz' infringing sales.

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1360-62 (Fed. Cir. 2012); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331–32 (Fed. Cir. 2009); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

### 2.2.1.5    Lost Profits—Panduit Factors—Market Share

If you find that there were acceptable non-infringing substitutes in the market, then Kona Ice may still be entitled to lost profits on a portion of Tikiz' infringing sales. The burden is on Kona Ice to prove that it is more likely than not that its product competed in the same market as Tikiz' infringing product, and that Kona Ice would have made a portion of the infringing sales equal to at least Kona Ice's share of that market but for Tikiz' infringement. It is not necessary for Kona Ice to prove that Kona Ice and Tikiz were the only two suppliers in the market for Kona Ice to demonstrate entitlement to lost profits.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377–78 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353–57 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577–78 (Fed. Cir. 1989).

### 2.2.1.6    Lost Profits—Panduit Factors—Capacity

The third factor asks whether Kona Ice had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Tikiz' infringement. Kona Ice must prove that it could have supplied the additional products needed to make the sales Kona Ice said it lost, or that someone working with Kona Ice could have supplied the additional products. Kona Ice also must prove that it more likely than not had the ability to market and sell these additional products.

*Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

### 2.2.1.7  Lost Profits—Panduit Factors—Amount of   Profit—Incremental Income Approach

Kona Ice may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that Kona Ice would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

*Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482–83 (Fed. Cir. 1990); *King Instrument Corp. v. Otari*, 767 F.2d 853, 863–64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604, 616–17 (Fed. Cir. 1984), *overruled on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

## 2.2.2  Convoyed Sales

In this case, Kona Ice contends that its product is ordinarily sold along with other, related products. These other products are called "collateral products." It is part of your job to determine whether Kona Ice has proven that it is entitled to damages for the lost sales of any collateral products.

To recover lost profits for lost sales of any collateral products, Kona Ice must prove two things. First, Kona Ice must prove that it is more likely than not that it would have sold the collateral products but for the infringement. Second, the collateral products and the product must be so closely related that they effectively act or are used together for a common purpose. Damages for lost collateral sales, if any, are calculated in the same way as for calculating lost profits on the product.

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549–51 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22–23 (Fed. Cir. 1984).

## 2.2.3  Reasonable Royalty

### 2.2.3.1   Reasonable Royalty—Generally

If you find that Kona Ice has not proven its claim for lost profits, or if you find that Kona Ice has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.

6

The amount of damages that Tikiz pays Kona Ice for infringing Kona Ice's patent must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of Kona Ice's invention.

You must award Kona Ice a reasonable royalty in an amount that Kona Ice has proven it could have earned on any infringing sales for which you have not already awarded lost-profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product.



**KONA ICE'S POSITION:** Section 2.2.3.4 (apportionment) and Section 2.2.3.5 (entire market value rule) are not appropriate or applicable to this case. No apportionment is applicable here because the claims of the '447 patent are directed to and cover the entire infringing product – the Tikiz' service vehicle. For that same reason, the Tikiz' service vehicle does not have both infringing and non-infringing components. Rather, the entire Tikiz' service vehicle is the infringing product. It is for this reason that the AIPLA Proposed Model Patent Jury Instructions are not applicable.

A case directly on point here is the Federal Circuit's decision in *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348-1349. As explained below, *Exmark* relates to the proper application of the reasonably royalty analysis, and also relates to patent claims that cover an entire product. Thus, Exmark is particularly appropriate here, where the asserted patent claims of the '447 patent cover the entire service vehicle. As a result, the royalty base must be the entire service vehicle:

On appeal, Briggs argues that Exmark's expert should have apportioned or separated the value of the baffle from the other features of the mower through the royalty base rather than the royalty rate. We disagree. We have held that apportionment can be addressed in a variety of ways, including "by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Ericsson*, 773 F.3d at 1226. So

long as Exmark adequately and reliably apportions between the improved and conventional features of the accused mower, using the accused mower as a royalty base and apportioning through the royalty rate is an acceptable methodology. Id. (citing *Garretson*, 111 U.S. at 121). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Id.*

Using the accused lawn mower sales as the royalty base is particularly appropriate in this case because the asserted claim is, in fact, directed to the lawn mower as a whole. The preamble of claim 1 recites a "multiblade lawn mower." '863 patent col. 5 l. 60. It is not the baffle that infringes the claim, but rather the entire accused mower. Thus, claim 1 covers the infringing product as whole, not a single component of a multi-component product. There is no unpatented or non-infringing feature of the product. Nonetheless, "[w]hen a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) (citing *Ericsson*, 773 F.3d at 1233). We hold that such apportionment can be done in this case through a thorough and reliable analysis to apportion the royalty rate. We have recognized that one possible way to do this is through a proper analysis of the Georgia-Pacific factors. See id; see also *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). As we have explained, "the standard Georgia-Pacific reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation." *AstraZeneca*, 782 F.3d at 1338.

Finally, we note that Exmark's use of the accused lawn mower sales as the royalty base is consistent with the realities of a hypothetical negotiation and accurately reflects the real-world bargaining that occurs, particularly in licensing. As we stated in *Lucent Technologies, Inc. v. Gateway, Inc.*, "[t]he hypothetical negotiation tries, as best as possible, to recreate the ex ante licensing negotiation scenario and to describe the resulting agreement." 580 F.3d 1301, 1325 (Fed. Cir. 2009). "[S]ophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price," and thus "[t]here is nothing inherently wrong with using the market value of

8

the entire product, especially when there is no established market value for the infringing component or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature." Id. at 1339. This is consistent with the settlement agreement relied on by Exmark's damages expert, which the parties agree provided an effective royalty of 3.64% of the sales of the accused mowers.


*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348-1349

This is not a case of a product "made of many different components, one or more of which components may be covered by an asserted patent, while other components are not." *DUSA Pharms., Inc. v. Biofrontera Inc.*, No. 18-10568, 2020 U.S. Dist. LEXIS 187573, *3-4 (D. Mass. Oct. 9, 2020) ("The court agrees with DUSA that no apportionment of the lost profits between patented and unpatented components is required. This is not a case of a product 'made of many different components, one or more of which components may be covered by an asserted patent, while other components are not.' *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012). Here, the accused product is an illuminator for PDT, and the claims are directed to the illuminator as a whole, or a method for using such an illuminator to perform PDT. See '991 patent, claim 1 ('An illuminator for diagnosing or treating a patient, comprising . . . .'; '289 patent, claim 1 ('A method for photodynamically diagnosing or treating a patient, comprising . . . .'). That the accused device possesses characteristics not recited in a limitation does not impair the scope of claims. On this point, *Mars, Inc. v. TruRx LLC*, 2016 U.S. Dist. LEXIS 121888, 2016 WL 4034790 (E.D. Tex. Apr. 18, 2016), is instructive. In *Mars*, the court struck an expert report apportioning damages where the asserted claims were directed to a pet food formulation as a whole, even though the accused product also contained many unclaimed ingredients. 2016 U.S. Dist. LEXIS 121888, [WL] at *2.  In situations such as this — where the asserted patents cover the allegedly infringing products as a whole — the first Panduit1 factor 'does not require any allocation of consumer demand among the various limitations recited in a patent claim.' *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009). Instead, the patentee must show only that 'demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.' *Id.* (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995) (en banc)). *Mars*, 2016 U.S. Dist. LEXIS 121888, 2016 WL 4034790 at *2 (footnote added). Similarly here, where the asserted claims cover

the alleged illuminator as a whole, there is no need to apportion demand among features of the illuminator.").


**TIKIZ' POSITION:**

- **Tikiz' Proposed Language:**

  A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The total royalty must reflect the value attributable to the infringing features of the product, and no more.

- **Tikiz's Argument:**
  Tikiz's proposed language is verbatim from the AIPLA Proposed Model Patent Jury Instructions. Kona Ice is selectively cherry picking portions of the AIPLA jury instruction to conform to its own theory of the case. The drafters of the AIPLA Model Patent Jury Instructions drafted the instructions to be "a neutral set of jury instructions that are not biased in favor of either the patent owner or the accused infringer." https://www.aipla.org/home/news-publications/model-patent-jury-instructions . While Kona Ice maintains above that—under its theory of the case--these instructions are "not appropriate or applicable to this case," Tikiz should not be foreclosed from taking a contrary position at trial. Notably, there have been no rulings by the Court and no stipulations by the parties that these doctrines do not apply to this case.

  Here, the claims are directed to a "mobile confectionary apparatus" with both patented and unpatented features. For instance, the patented features of claim 1 are the side walls, interior space, opening, and liquid topping dispensing system. *See* '447 Patent, claim 1. While the word "vehicle" is recited to provide context for claiming the "gap" between the LTDS and side wall, the claim as a whole is directed to a "mobile confectionary apparatus." *See id.* Kona Ice before the USPTO emphasized that the invention is directed to a "mobile confectionary apparatus" or a "liquid toppings dispensing system." *See id.*, Abstract ("A mobile confectionary apparatus…"); *id.*, Title ("Liquid Toppings Dispensing System"); *id.* at 1:16-19 ("present invention generally relates to a mobile apparatus for serving confections…").

The unpatented features of Tikiz's accused vehicles are components and feature such as (1) the engine and drive train; (2) the steering mechanism; (3) the tires and suspension system; (4) the electrical system of the vehicle (including battery, alternator, and wiring); (5) the vehicle seats and safety restraints (such as air bags and seat belts); (6) the AC system; (7) braking system; (8) engine coolant system; (9) exterior branding and decoration of the vehicle; and (10) equipment to chill and shave ice. The dependent claims make clear that the "vehicle" of claim 1 does not include at least (1), (2), and (4)-(8). Dependent claim 5, for instance, recites the "vehicle" being a "trailer." Trailers do not include things like an engine, and therefore it is clear that there are unpatentable features to claim 1.

The Federal Circuit mandates that these unpatented features should not be reflected in a reasonable royalty:

> When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features…The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (cited by AIPLA model rule below).

Kona Ice argues above that apportionment/attribution/entire market value are "not appropriate" because the claim recites "vehicle" in the body of the claim. Kona Ice's approach conflicts with the law and the facts.

***First***, apportionment is required even when the claim covers an entire multi-component product. For instance, the Federal Circuit mandates that "[w]hen a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court ***must*** determine how to account for the ***relative value*** of the patentee's ***invention*** in comparison ***to the value of the conventional elements*** recited in the claim, standing alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015); *see also Ericsson,* 773 F.3d at 1233 ("the patent holder should only be compensated for the approximate incremental benefit derived from his invention"). Thus, under *AstraZeneca*, even assuming arguendo that the

11

"vehicle" is claimed as a whole (which Tikiz disputes as noted above), the Court needs to instruct the Jury to account for the "relative value of the … invention in comparison to the value of the conventional elements recited in the claim." *See* 782 F.3d at 13380. Here, the vast majority of the patented elements are conventional in the '447 Patent. For instance, aside from the claimed "gap" between the LTDS and the side wall, the '447 Patent describes the "vehicle" and its other components as "known in the art" or "conventional." '447 Patent, 4:10-13 (describing vehicle chasis as "known in the art"); 4:2-7 (describing "truck chasis [that] includes an engine and drive train" as propelling the vehicle in a "conventional manner"). The '447 Patent also concedes that the "side walls" and "opening" of the claim were present in the prior art. *Id.*, 1:23-42 (noting that "[m]obile confectionaries … have been around for years" and acknowledging the existence in the prior art of a "box-like enclosure having an interior work space [i.e., which is formed by the side walls] … and at least one service window [i.e., the claimed opening]"). Indeed, multiple aspects of the "vehicle" are so conventional and inconsequential to the invention that the '447 Patent describes them only in passing and expressly acknowledges they are "not shown" in the Figures. *Id.*, at 4:3, 4:11, 5:1, 7:8, 8:15, 8:15.

**Second**, the *Exmark* case cited by Kona Ice above **refutes**, rather than supports, its position. In *Exmark*, the Federal Circuit only found that the claim was directed to a lawn mower as a whole only after emphasizing that "[t]he preamble of claim 1 recites a 'multiblade lawn mower.'" *Exmark*, 879 F.3d at 1348. The recitation of "lawn mower" in the preamble was the **only** fact the Federal Circuit found dispositive. *See id.* Here, the preamble of claim 1 of the '447 Patent recites a "mobile confectionary apparatus." '447 Patent, claim 1. Accordingly, under *Exmark*, the "vehicle" is not claimed as a whole. *See* 879 F.3d at 1348. This is further confirmed by other sections of the '447 Patent that emphasize the LTDS or mobile confectionary apparatus. *See* discussion of Abstract, Title, and Specification above. Kona Ice's suggested approach would lead to absurd results. For instance, if an inventor comes up with a novel and nonobviousness windshield wiper blade, but then claims it as part of a conventional "vehicle," that would not mean that the reasonable royalty should be based on the entire market value of the vehicle worths tens or hundreds of thousands of dollars.

**Finally**, Kona Ice's other cases are inapposite and confuse the distinct legal doctrines of lost profits and reasonable royalty.  The proposed instruction above relates to reasonable royalty (as made clear by the AIPLA Model Patent

Jury Instructions structure). Case law cited by Kona Ice clearly relates to lost profits.

- *DUSA Pharm*: By Kona Ice's own admission, this case relates to "apportionment of lost profits," not reasonable royalty. *See* parenthetical cited above. *See DUSA Pharms., Inc. v. Biofrontera Inc.*, No. 18-10568, 2020 U.S. Dist. LEXIS 187573, *3-4 (D. Mass. Oct. 9, 2020) ("The court agrees with DUSA that no apportionment of the ***lost profits*** between patented and unpatented components is required." The same language is quoted by Kona Ice above.

- <u>*Mars:*</u> Kona Ice citation to *Mars* also makes clear that the relied upon language related to lost profits, not reasonable royalty. The DUSA opinion quoted by Kona Ice references *Mars* discusses a "Panduit1." *Mars, Inc. v. TruRx LLC*, 2016 U.S. Dist. LEXIS 121888, 2016 WL 4034790 (E.D. Tex. Apr. 18, 2016) (referencing "Panduit Factor One" in context of lost profits").

- *DuPuy: DuPuy* was an appeal of a lost profits damages verdict, and thus, is not applicable to reasonable royalty. DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1329 (Fed. Cir. 2009) ("Medtronic challenges the jury's award of $149.1 million in lost profits.")

- *Rite-Hite: Rite-Hite* is an en banc appeal relating to lost profits. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). Reasonable royalty generally or apportionment of reasonable royalty was not even discussed by the Federal Circuit. *See generally id.*

/////////////////////////////////////////////////////

/////////////////////////////////////////////////////

35 U.S.C. § 284; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977–79 (Fed. Cir. 2018); *Exmark Mfg. Co., v. Briggs & Stratton Power Group,* 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir.

2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

### 2.2.3.2    Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Kona Ice and Tikiz. Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also assume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

*Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

### 2.2.3.3    Reasonable Royalty—Relevant Factors If Using the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.    The rates paid by Tikiz to license other patents comparable to the '447 patent.

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.    The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.    The duration of the '447 patent and the term of the license.

8.    The established profitability of the product made under the '447 patent; its commercial success; and its popularity.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.   The extent to which Tikiz has made use of the invention; and any evidence that shows the value of that use.

12.   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.   The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

15

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as Tikiz) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898–900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

//////////////////////////////////

//////////////////////////////////

**KONA INC'S POSITION:**  SEE ABOVE, WHEREIN KONA ICE EXPLAINED ITS POSITION THAT SECTION 2.2.3.4 (APPORTIONMENT) AND SECTION 2.2.3.5 (ENTIRE MARKET VALUE RULE) ARE NOT APPROPRIATE OR APPLICABLE TO THIS CASE.

**TIKIZ' POSITION  (FOR 2.2.3.4 AND 2.2.3.5):**

16

Both Sections 2.2.3.4 (Reasonable Royalty--Attribution/Apportionment) and 2.2.3.5 (Reasonable Royalty—Entire Market Value Rule)are part of the AIPLA Model Patent Jury Instructions. Neither instruction is listed as optional. Tikiz disagrees that these instructions are "not appropriate or applicable" for the reasons articulated above. Kona Ice is free to explain its position to the Jury but the Jury should be instructed on these important legal principles.

With respect to Instruction 2.2.3.4., even if the parties agreed on the patented/unpatented technical features, Instruction 2.2.3.4 directs the jury to account the "value attributable to … marketing or advertising, Tikiz' size, or market position."

With respect to Instruction 2.2.3.5., the vehicle is a "multi-component product" in that it has both patented and unpatented features noted above. Accordingly, this Instruction is relevant and should be provided to the jury.

**TIKIZ' PROPOSED INSTRUCTION (FOR 2.2.3.4 AND 2.2.3.5):**

### 2.2.3.4     Reasonable Royalty—
### Attribution/Apportionment

The amount you find as damages must be based on the value attributable to the patented features, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, Tikiz's size, or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977–79 (Fed. Cir. 2018); *Exmark Mfg. Co., v. Briggs & Stratton Power Grp.*, 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); *Ericsson, Inc. v.*

*D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1319 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009).

### 2.2.3.5  Reasonable Royalty—Entire Market Value Rule

A multi-component product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patented invention and has close relation to the claimed invention. If the smallest salable unit is a multi-component product containing one or more non-infringing features with no relation to the patented feature(s), damages must only be based on the portion of the value of that smallest salable unit product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold.

The entire market value rule is a narrow exception to this general rule. In order to recover damages as a percentage of revenues or profits attributable to the entire product, Kona Ice must establish that it is more likely than not that the patented feature is the sole driver of customer demand for an entire multi-component product such that it creates the basis for customer demand or substantially creates the value of the product.

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–29 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336–37 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549–51 (Fed. Cir. 1995) (en banc).

//////////////////////////////////////

//////////////////////////////////////

### 2.2.3.6      Reasonable Royalty—Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the negotiation. Evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

35 U.S.C. § 284; *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770–73 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25, 1333 (Fed. Cir. 2009); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1571–72 (Fed. Cir. 1988); *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933).

### 2.2.3.7      Reasonable Royalty—Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

*Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372–73 (Fed. Cir. 2008); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996).

### 2.2.3.8      Reasonable Royalty—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question, or for comparable rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Kona Ice and Tikiz in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Kona Ice and Tikiz, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

19

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227–28 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1325–26 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77–81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).

### 2.3    Doubts Resolved Against Infringer

Any doubts that you may have on the issue of damages due to Tikiz' failure to keep proper records should be decided in favor of Kona Ice. Any confusion or difficulties caused by Tikiz' records or lack of records also should be held against Tikiz, not Kona Ice.

*Bigelow v. R.K.O. Pictures, Inc.*, 327 U.S. 251, 264–65 (1946); *Story Parchment Co. v. Patterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572–73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 3.    Willful Infringement

### 3.0    Willful Infringement—Generally

Because I have determined that Tikiz infringed a valid claim of Kona Ice's patent, you must also determine whether or not Tikiz' infringement was willful.

To show that Tikiz' infringement was willful, Kona Ice must prove that Tikiz knew of Kona Ice's patent and intentionally infringed at least one asserted claim of the patent. You may consider whether Tikiz's behavior was deliberate or intentional. However, you may not find that Tikiz's infringement was willful merely because Tikiz knew about the patent, without deliberate or intentional infringement. In determining whether Kona Ice has proven that Tikiz' infringement was willful, you must consider all of the circumstances and assess Tikiz' knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367 (Fed. Cir. 2020); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)

## Appendix A – Glossary of Terms

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**Case No.: 0:18-cv-60237-KMM**

Tikiz Franchising, LLC and
Tikiz Enterprises, LLC,

       Plaintiffs,

v.

Kona Ice, Inc.,

       Defendant.

_____/

## III.   Glossary of Patent Terms

**Application—**The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "USPTO" or "PTO").

**Claims—**The numbered sentences or paragraphs appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper—**See "prosecution history" below.

**License—**Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office Action—**Communication from the Patent Examiner regarding the patent application.

**Ordinary skill in the art (AIA) —**The level of experience, education, or training generally possessed by those individuals who work in the area of the invention before the effective filing date of the patent.

**Patent Examiners—**Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims are eligible for patenting, (2) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (3) whether the specification/application describes the invention with the required specificity.

**Prior Art (AIA)—**Knowledge that is publicly available before the effective filing date of the patent application.

**Prosecution History—**The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file history" or "file wrapper" of the patent during this trial.

**References—**Any item of prior art used to determine patentability.

**Specification—**The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor describes the invention, how it works, and how to make and use it.

**Appendix B – [Proposed] Verdict Form**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**Case No.: 0:18-cv-60237-KMM**

Tikiz Franchising, LLC and
Tikiz Enterprises, LLC,

   Plaintiffs,

v.

Kona Ice, Inc.,

   Defendant.

_____/

**[PROPOSED] VERDICT FORM AND QUESTIONNAIRE**

I. **DAMAGES**

 A. **Has Kona Ice proved by a preponderance of the evidence that it is entitled to lost profits for Tikiz' infringement of the '447 patent?**

    **YES** _____ **NO** _____
    **(CHECK ONE)**

 B. **If you answered "YES" to I.A., what amount of lost profits has Kona Ice proved by a preponderance of evidence?**

    Lost Profits: $_____

23

C. **If you answered "NO" to I.A., what amount of reasonable royalty has Kona Ice proved by a preponderance of the evidence?**

Reasonable Royalty: $_____

II.    **WILLFUL INFRINGEMENT**

A.    **Has Kona Ice proved by clear and convincing evidence that Tikiz willfully infringed the '447 patent?**

YES  _____    NO  _____
**(CHECK ONE)**

**For the Jury:**

By:  _____
Foreperson

Date:  _____

24

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was file with the Court and served on counsel of record via the Court's electronic docketing system.

Dated: June 11, 2024

Respectfully submitted,

<u>/s/ *Elizabeth G. McIntosh*                    </u>